Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHRYN NICHOLS,<br><br>Plaintiff,<br><br>vs.<br><br>PREMIER FINANCIAL BANCORP, INC., ROBERT W. WALKER, MARSHALL T. REYNOLDS, TONEY K. ADKINS, HARRY M. HATFIELD, LLOYD G. JACKSON II, PHILIP E. CLINE, KEITH F. MOLIHAN, NEAL SCAGGS, THOMAS W. WRIGHT, and PEOPLES BANCORP INC.,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Cathryn Nichols ("Plaintiff"), by and through her attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## **SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Premier Financial Bancorp, Inc. ("Premier" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), Peoples Bancorp Inc. ("Parent" or "Peoples," and with Premier and Individual Defendants, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and

Exchange Act of 1934 (the "Exchange Act") as a result of the Individual Defendants' efforts to sell the Company to Peoples as a result of an unfair process, and to enjoin an upcoming stockholder vote on all stock proposed transaction valued at approximately $292.3 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a March 31, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Premier will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Peoples. Premier shareholders will receive 0.58 shares of Peoples common stock for each share of Premier common stock held. This implies a per share value of $19.69 per share for Premier based on Peoples' 20-day volume weighted average closing price of $33.95 per share as of March 26, 2021.

3. Thereafter, on May 12, 2021, Peoples' filed a Registration Statement on Schedule S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Registration Statement describes an insufficient process in which the Board rushed through a sales process in which the Board failed to negotiate a collar mechanism.

5. Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on May 12, 2021 with the SEC in an effort to solicit Plaintiff to vote his Premier

shares in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Premier and Peoples, provided by Premier and Peoples to the Company's financial advisor Piper Sandler & Co. ("Piper Sandler"), and to Peoples' financial advisor Raymond James & Associates, Inc. ("Raymond James"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Piper Sandler and Raymond James and provided to the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

8. Plaintiff is a citizen of Virginia and, at all times relevant hereto, has been a Premier stockholder.

9. Defendant Premier is a financial services holding company. Premier is incorporated in Kentucky and has its principal place of business at 2883 Fifth Avenue, Huntington, West Virginia. Shares of Premier common stock are traded on the Nasdaq Stock Exchange under the symbol "PFBI."

10. Defendant Robert W. Walker ("Walker") has been a Director of the Company at all relevant times. In addition, Walker serves as the Company's Principal Executive.

11. Defendant Marshall T. Reynolds ("Reynolds") has been a director of the Company at all relevant times. In addition, Reynolds serves as the Chairman of the Company Board.

12. Defendant Toney K. Adkins ("Adkins") has been a director of the Company at all relevant times.

13. Defendant Harry M. Hatfield ("Hatfield") has been a director of the Company at all relevant times.

14. Defendant Lloyd G. Jackson II ("Jackson") has been a director of the Company at all relevant times.

15. Defendant Philip E. Cline ("Cline") has been a director of the Company at all relevant times.

16. Defendant Keith F. Molihan ("Molihan") has been a director of the Company at all relevant times.

17. Defendant Neal Scaggs ("Scaggs") has been a director of the Company at all relevant times.

18. Defendant Thomas W. Wright ("Wright") has been a director of the Company at all relevant times.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

20. Defendant Peoples is a diversified financial services holding company and makes available a complete line of banking, trust and investment, insurance and premium financing solutions through its subsidiaries. Peoples is incorporated in Ohio and shares of Peoples common stock are traded on the Nasdaq Stock Exchange under the symbol "PEBO."

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations

of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

24. Premier, a multi-bank holding company, provides community banking services to individuals and small-to-medium sized businesses. The Company accepts various deposit products, including checking, NOW, savings, money market, club, individual retirement, and overdraft protection accounts, as well as certificates of deposit. It also provides loans secured by 1-4 family residential real estate, multifamily residential real estate, owner occupied non-farm non-residential real estate, and non-farm non-residential real estate; commercial and industrial loans not secured by real estate; consumer loans; construction, land, and land development loans; and farmland and agricultural loans, and loans to tax-exempt entities. In addition, the Company offers depository and funds transfer services; collections; safe deposit boxes; cash management services; bill payment,

remote deposit, check imaging, and automated teller machine services; and internet, mobile, and telephone banking services.

25. As of March 6, 2020, Premier operated thirteen banking offices in Kentucky; three banking offices in Ohio; twenty-six banking offices in West Virginia; four banking offices in Washington, DC; one banking office in Maryland; and three banking offices in Virginia. The Company was incorporated in 1991 and is headquartered in Huntington, West Virginia.

26. The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results. For example, in the January 22, 2021 Press Release announcing its 2021 Q1 financial results, the Company highlighted first quarter Net Income of $5.638 million as well as Net operating costs increased by $71,000, or 0.8%, while interest expense increased by $73,000, or 3.3% from the first quarter of 2019.

27. Defendant CEO Walker commented on the results in the Press Release, "'We are pleased with our first quarter 2020 results as they compare to the first quarter of 2019, which was then a new record quarter. Most of the income statement items compare closely, with the exception of the high level of income from deferred interest and discounts recognized on loans that paid off during the first quarter of 2019 and the additional provision for loan losses related to the COVID-19 virus. Our interest income from investments was higher and our interest expense on borrowings was lower in the first quarter of 2020 when compared to the first quarter of 2019. We are certainly living in unprecedented times as governments worldwide take measures to curb the spread of the COVID-19 virus. I am proud to report that our management and staff team members have risen to the occasion.'"

***The Flawed Sales Process***

28. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants.

29. Notably, while the Registration Statement does make reference to a committee of the Board created by Defendant Reynolds to identify and engage a financial advisor, it fails to specify if this was a special committee created to run the sales process in general, and, if so, whether all the directors assigned to sit on this committee were independent, outside directors. Nor does the Registration Statement indicate what specific powers this committee had in relation to approval of any potential agreement.

30. The Registration Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

31. In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Peoples, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, and if so in what way and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

32. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

33. On March 29, 2021, Premier and Peoples issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **MARIETTA, Ohio, and HUNTINGTON, West Virginia** - Peoples Bancorp Inc. ("Peoples") (NASDAQ: PEBO) and Premier Financial Bancorp, Inc. ("Premier") (NASDAQ: PFBI), jointly announced today the signing of a definitive agreement and plan of merger ("Merger Agreement") pursuant to which Peoples will acquire, in an all-stock merger, Premier, a bank holding company headquartered in Huntington, West Virginia, and the parent company of Premier Bank, Inc. ("Premier Bank") and Citizens Deposit Bank & Trust, Inc. ("Citizens"). Under the terms of the Merger Agreement, Premier will merge with and into Peoples (the "Merger"), and Premier Bank and Citizens will subsequently merge with and into Peoples' wholly owned subsidiary, Peoples Bank, in a transaction valued at approximately $292.3 million.
>
> Upon completion of the Merger, the combined company will have approximately $6.7 billion in total assets, $4.6 billion in total loans and $5.5 billion in total deposits with 136 locations in Ohio, West Virginia, Kentucky, Maryland, Virginia and Washington, D.C.
>
> Premier, through its two community bank subsidiaries, operates 48 branches in thirty-eight communities spanning across five-states, plus Washington D.C. As of December 31, 2020, Premier had, on a consolidated basis, $1.9 billion in total assets, which included $1.2 billion in total net loans, and $1.6 billion in total deposits.
>
> "We are excited about our partnership with Premier and the addition of significant scale to enhance our ability to drive future growth and improved profitability. Premier's strong core franchise provides a natural extension of our existing markets, as well as entry into attractive markets within Virginia, Maryland and Washington, D.C." said Chuck Sulerzyski, President and Chief Executive Officer of Peoples. "Over the years, we have successfully expanded our West Virginia and Kentucky footprint. We are proud to have been recognized in 2020 as the number one bank in West Virginia as part of Forbes' annual list of America's Best-In-State Banks and Credit Unions. We also were voted as The Best in the Tri-State by readers of the Herald Dispatch (Huntington, WV). We look forward to welcoming Premier shareholders, employees and customers to become part of our team, and we are ecstatic to offer additional locations to new and existing Peoples Bank clients."
>
> Bob Walker, President and Chief Executive Officer of Premier commented, "We are excited to have the opportunity to join forces with one of the strongest banks in the region. Our customers, employees and shareholders will benefit from Peoples' history of profitable growth and expertise in successfully executing acquisitions. We are also excited about Peoples' expansive suite of products, which will provide us the ability to deliver new products and services, including insurance and investment

> products, to our valued customers in the communities we serve. Peoples' community banking model, culture and commitment to high-quality customer service makes Peoples' an excellent choice for Premier."
>
> According to the terms of the Merger Agreement, which has been unanimously approved by the Boards of Directors of both companies, shareholders of Premier will receive 0.58 shares of Peoples common stock for each share of Premier common stock, and the Merger is expected to qualify as a tax-free reorganization for Premier shareholders. Based on Peoples' 20-day volume weighted average closing price of $33.95 per share as of March 26, 2021, the aggregate deal value is approximately $292.3 million, or $19.69 per share. The transaction is expected to be immediately accretive to Peoples' estimated earnings before one-time costs, with a tangible book value earn back of approximately 2.6 years, and an internal rate of return in excess of 20%.
>
> The acquisition is expected to close during the third quarter of 2021, subject to the satisfaction of customary closing conditions, including regulatory approvals and the approval of the shareholders of Peoples and Premier. At that time, Premier's offices will become branches of Peoples Bank.

***Potential Conflicts of Interest***

34. The breakdown of the benefits of the deal indicate that Premier insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Premier.

35. Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Registration Statement discloses the below information, it fails to disclose an accounting of the merger consideration they will be exchanged for upon the consummation of the Proposed Transaction.

| Name and Position(s) of Director or Executive Officer | Number of Shares of Common Stock Beneficially Owned[1] | Exercisable Stock Options | Percent of Common Stock Outstanding |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Directors and Executive Officers** | | | |
| Toney K. Adkins<br>Director | 16,209 | 0 | * |
| Philip E. Cline<br>Director | 168,000 | 0 | 1.1% |
| Harry M. Hatfield<br>Director | 30,000 | 0 | * |
| Lloyd G. Jackson, II<br>Director | 22,189 | 0 | * |
| Douglas V. Reynolds<br>Director | 425,453 | 0 | 2.9% |
| Marshall T. Reynolds<br>Chairman of the Board | 1,096,549 | 0 | 7.4% |
| Neal W. Scaggs<br>Director | 170,597 | 0 | 1.2% |
| Robert W. Walker<br>Director and Chief Executive Officer | 124,842 | 0 | * |
| Thomas W. Wright<br>Director | 8,258 | 0 | * |
| Brien M. Chase<br>Chief Financial Officer | 44,512 | 0 | * |
| J. Mark Bias<br>Senior Vice President | 2,887 | 20,175 | * |
| Michael R. Mineer<br>Senior Vice President | 73,715 | 16,700 | * |
| Scot A. Kelley<br>Vice President, Credit Administration | 27,644 | 1 | * |
| Katrina Whitt<br>Vice President, Human Resources | 18,130 | 9,476 | * |
| **Directors and Executive Officers as a Group ( 14 persons)** | 2,288,985 | 46,352 | 15.4% |
| **Beneficial Owners of More than 5%** | | | |
| Marshall T. Reynolds<br>P.O. Box 4040<br>Huntington, West Virginia 25729 | 1,096,549 | — | 7.4% |
| Sheldon Clark[2] 505<br>Beachland Blvd PMB 320<br>Vero Beach, Florida 32963 | 1,044,098 | — | 7.1% |
| Dimensional Fund Advisors LP[3]<br>Building One 6300 Bee Cave Road<br>Austin, Texas, 78746 | 972,038 | — | 6.6% |
| BlackRock, Inc.[4]<br>55 East 52nd Street<br>New York, New York 10055 | 781,376 | — | 5.3% |

36. Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted share, or other equity

award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name | Number of Currently Vested Options | Total Payment for Vested Options | Number of Currently Unvested Options | Total Payment for Unvested Options |
|---|---|---|---|---|
| J. Mark Bias | 20,175 | $ 108,519 | 6,300 | $ 55,327 |
| Brien M. Chase | 0 | 0 | 6,300 | 55,327 |
| Scot A. Kelley | 1 | 10 | 3,900 | 34,250 |
| Michael R. Mineer | 16,700 | 73,024 | 6,300 | 55,327 |
| Katrina Whitt | 9,476 | 46,428 | 3,150 | 27,664 |
| All other employees | 142,844 | 912,052 | 40,650 | 359,116 |
| Total | 189,236 | $ 1,140,033 | 66,600 | $ 587,011 |

37. In addition, certain employment agreements with certain Premier executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash (1) ($) | Equity (2) ($) | Pension/ Non-Qualified Deferred Compensation ($) | Perquisites/ Benefits (3) ($) | Total ($) |
|---|---|---|---|---|---|
| Robert W. Walker | $ 1,046,500 | — | — | — | $ 1,046,500 |
| J. Mark Bias | — | $ 55,327 | — | — | $ 55,327 |
| Brien M. Chase | — | $ 55,327 | — | — | $ 55,327 |
| Scot A. Kelley | — | $ 34,250 | — | — | $ 34,250 |
| Michael R. Mineer | — | $ 55,327 | — | — | $ 55,327 |
| Katrina Whitt | — | $ 27,664 | — | — | $ 27,664 |

38. The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Premier, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

40. On May 12, 2021, the Premier Board and Peoples caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose

a. Whether the committee created by Defendant Reynolds to search for a financial advisor was a special committee created to run the sales process;

b. The specific powers of the aforementioned committee;

c. Whether the directors who make up the aforementioned committee are independent outside directors;

d. Whether the confidentiality agreements entered into by the Company with Peoples differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties, and if so, in what way

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Peoples, would fall away;

f. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications

regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and the Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Premier's Financial Projections*

42. The Registration Statement fails to provide material information concerning financial projections provided by Premier management and relied upon by Piper Sandler and Raymond James in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. The Registration Statement should have, but fails to provide, certain information in the projections that Premier and/or Peoples' management provided to the Board, Piper Sandler, and Raymond James. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

44. With regard to the "*Premier Financial Prospective Financial Information*" projections, the Registration Statement fails to disclose material information concerning all metrics and assumptions underlying the provided projections.

45. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Piper Sandler or Raymond

James' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning Peoples' Financial Projections*

47. The Registration Statement fails to provide material information concerning financial projections provided by Peoples' management and relied upon by Piper Sandler and Raymond James in their analyses.

48. The Registration Statement should have, but fails to provide, certain information in the projections that Peoples' management provided to the Board, Piper Sandler and Raymond James. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

49. Notably the Registration Statement fails to provide any projection information for Peoples' whatsoever, despite the merger consideration being composed entirely of Peoples' stock.

50. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Premier's true worth, the value of the merger consideration, the accuracy of Piper Sandler and Raymond James analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Sandler*

52. In the Registration Statement, Piper Sandler describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include

necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53. With respect to the *Comparable Companies Analyses*, the Registration Statement fails to disclose the following:

a. The specific metrics for each compared company.

54. With respect to the *Analysis of Precedent Transactions*, the Registration Statement fails to disclose the following:

a. The specific metrics for each selected transaction;

b. The date on which each selected transaction was announced;

c. The date on which each selected transaction was consummated; and

d. The value of each selected transaction.

55. With respect to the *Net Present Value Analyses*, the Registration Statement fails to disclose the following:

a. The terminal value of a share of Premier common stock at December 31, 2025;

b. The specific inputs and assumptions used to determine the utilized earnings multiples range of 10.0x to 15.0x;

c. The specific inputs and assumptions used to determine the utilized 2025 tangible book value range rate of 110% to 160%;

d. The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 15.0%;

e. With respect to the projection based earnings per share multiples sensitivity, the Registration Statement fails to disclose:

   i. The specific inputs and assumptions used to assume Premier's earnings varied from 10% above projections to 10% below projections;

ii. The specific inputs and assumptions used to determine the utilized earnings multiples range of 10.0x to 15.0x;

iii. The specific inputs and assumptions used to determine the utilized discount rate of 13.23%.

f. With respect to the sensitivity analysis as verbally directed by Peoples' management, the Registration Statement fails to disclose:

i. The specific inputs and assumptions used to determine the utilized earnings multiples range of 11.0x to 21.0x;

ii. The specific inputs and assumptions used to determine the utilized 2025 tangible book value range rate of 145% to 220%; and

iii. The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 14.0%.

g. With respect to the estimates based earnings per share multiples sensitivity, the Registration Statement fails to disclose:

i. The specific inputs and assumptions used to assume Premier's earnings varied from 10% above estimates to 10% below estimates;

ii. The specific inputs and assumptions used to determine the utilized earnings multiples range of 11.0x to 21.0x;

iii. The specific inputs and assumptions used to determine the utilized discount rate of 11.49%.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Premier stockholder.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Raymond James*

58. In the Registration Statement, Raymond James describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

59. With respect to the *Contribution Analyses*, the Registration Statement fails to disclose the following:

a. All specific financial and operating metrics analyzed for both Premier and Peoples including: (i) total assets; (ii) total gross loans; (iii) total deposits; (iv) tangible common equity; (v) tangible common equity excluding the $1.00 per share special dividend declared and paid by Premier Financial in February 2021 (the "Special Dividend"); (vi) net income for the year ended December 31, 2020; (vii) estimated 2021 net income and; (viii) estimated 2022 net income. Metrics (i) – (v) above were as of December 31, 2020

60. With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The Peoples Projections referenced;

b. The specific inputs and assumptions used to determine the utilized multiples range of 13.0x to 15.0x;

c. The terminal values for Peoples in 2025;

d. The terminal values for Premier in 2025;

e. The specific inputs and assumptions used to determine the utilized discount rate range for Peoples of 10% to 12%;

f. The specific inputs and assumptions used to determine the utilized discount rate range for Premier of 11% to 13%;

g. The maximum implied per share value of Premier Financial common stock;

h. The minimum implied per share value of Peoples common shares;

i. The minimum implied per share value of Premier Financial common stock; and

j. The maximum implied per share value of Peoples common shares.

61. With respect to the *Selected Companies Analysis*, the Registration Statement fails to disclose the following:

a. The specific metrics for each compared company.

62. With respect to the *Selected Transactions Analysis*, the Registration Statement fails to disclose the following:

e. The specific metrics for each selected transaction;

f. The date on which each selected transaction was announced;

g. The date on which each selected transaction was consummated; and

a. The value of each selected transaction.

63. With respect to the *Discounted Cash Flow with Synergies Analysis*, the Registration Statement fails to disclose the following:

a. Pro Forma Financial Adjustments made to the Premier Financial prospective financial information as provided by Peoples management;

b. The specific inputs and assumptions used to determine the utilized discount rate range of 10.00% to 12.00%;

c. The present value of the estimated excess cash flows that Premier could generate over the period from September 30, 2021 through December 31, 2025;

d. The present value of Premier Financial ’s implied terminal value at the end of such period;

e. The specific inputs and assumptions underlying the assumption that Premier Financial would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level;

f. The terminal value of the illustrative entity; and

g. The specific inputs and assumption used to determine the utilized multiple rate range of 13.0x to 15.0x.

64. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

65. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Premier stockholder.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

68. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

69. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

70. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

71. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

72. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

73. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

74. Plaintiff repeats all previous allegations as if set forth in full herein.

75. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

76. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

77. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Premier's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations

specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

78. The Individual Defendants acted as controlling persons of Premier within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Premier to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Premier and all of its employees. As alleged above, Premier is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Premier and obtain a transaction which is in the best interests of Premier and its stockholders, including Plaintiff;

D. Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 20, 2021

**BRODSKY SMITH**

By: ______________________

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*